***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Homick and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms the Opinion and Award of Deputy Commissioner Homick and enters the following Opinion and Award:
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. This consolidated proceeding involves four (4) admittedly compensable workers' compensation claims. *Page 2 
2. I.C. No. 673849 involves an admittedly compensable injury to plaintiff's left shoulder, left elbow, and lower back on September 20, 2006. Defendant paid compensation to plaintiff under this claim based on an assumed average weekly wage of $815.26 and an assumed compensation rate of $543.53.
3. I.C. No. 897309 involves an admittedly compensable injury to plaintiff's left knee on October 11, 2007. Defendant paid compensation to plaintiff under this claim based on an assumed average weekly wage of $920.66 and an assumed compensation rate of $613.81.
4. I.C. No. 858355 involves an admittedly compensable injury to plaintiff's right foot on March 12, 2008. The average weekly wage and compensation rate applicable to this injury are $1,009.42 and $673.29, respectively.
5. I.C. No. W31901 involves an admittedly compensable injury to plaintiff's right ankle and right knee on May 20, 2009. Although defendant paid compensation to plaintiff based on a different average weekly wage for this injury, the parties subsequently stipulated to an average weekly wage of $951.44 and a corresponding compensation rate of $634.28 with respect to this injury.
6. Plaintiff also filed a Form 18 on March 26, 2010, with respect to I.C. No. W74657 and an alleged date of injury of November 20, 2006. After further investigation, however, plaintiff corrected the date of injury to September 20, 2006, and I.C. NO. 673849 already addressed the correct date of injury.
7. At all relevant times, the parties hereto were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
8. At all relevant times, defendant-employer regularly employed three (3) or more employees in the State of North Carolina. *Page 3 
9. At all relevant times, the third-party administrator of workers' compensation claims in North Carolina for the self-insured defendant-employer was Gallagher Bassett.
10. The North Carolina Industrial Commission has jurisdiction over the subject matter and the parties involved in this case.
11. Plaintiff has received unemployment compensation in the amount of $466.00 per week for a period of time between March 15, 2010, and September 30, 2010, which is subject to verification by claims payment history from the Employment Security Commission, and defendant is entitled to a credit for such compensation under N.C. Gen. Stat. § 97-42.1. However, plaintiff retains the right to dispute the amount of this credit based on the analogous principles ofCole v. Triangle Brick, 136 N.C. App. 401, 524 S.E.2d 79 (2000), and Church v. Baxter Travenol Laboratories, Inc.,104 N.C. App. 411, 409 S.E.2d 715 (1991).
12. The parties stipulated to the admissibility of the following documents, which were received into evidence:
 • Exhibit 1: Pre-Trial Agreement;
 • Exhibit 2: Industrial Commission Forms, Medical Records, Case Management Reports, Motions, Discovery Responses, Employment Security Commission Records, Employment Records (pages 1-863);
 • Exhibit 3: Employment Security Records Related to Appeal (7 pages);
 • Exhibit 4: Employment Security Records Related to Job Search (5 pages); and
 • Exhibit 5: Defendant-Employer's Code of Conduct (4 pages).
 *********** *Page 4 
As set forth in the Pre-Trial Agreement and Deputy Commissioner Homick's May 27, 2011 Opinion and Award, the Full Commission addresses the following:
 ISSUES
1. Plaintiff's issues for determination are as follows:
 a) Is plaintiff entitled to temporary partial disability benefits at any time since March 12, 2008?
 b) Has plaintiff been totally disabled from March 15, 2010, through the present and continuing?
 c) What is plaintiff's average weekly wage with respect to the workers' compensation claims in 2006 and 2007?
 d) Is defendant liable for additional medical and indemnity compensation for plaintiff's injuries?
 2. Defendant's issues for determination are as follows:
 a) Whether plaintiff constructively refused employment?
 b) To what benefits is plaintiff entitled?
 c) What is the amount of the credit due pursuant to N.C. Gen. Stat. § 97-42.1?
 d) What is the appropriate workers' compensation rate to be paid for ongoing benefits?
 ***********
Based upon the preponderance of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT *Page 5 
1. At the time of the hearing before the Deputy Commissioner, plaintiff was thirty-eight years old. Plaintiff had graduated from high school and taken some college courses but had not received a degree.
2. Prior to working for defendant-employer, plaintiff had worked as a brick mason, delivery route driver, and supervisor.
3. On October 31, 2005, plaintiff began work for defendant-employer as a delivery truck driver. This job required him to deliver beverages and merchandise to defendant-employer's customers.
4. On September 20, 2006, plaintiff injured his left shoulder, left elbow, and lower back in a work-related accident while delivering merchandise for defendant-employer. Defendant accepted the compensability of this claim with the filing of a Form 60 Employer's Admission ofEmployee's Right to Compensation. The Form 60 reported plaintiff's average weekly wage to be $815.26, with a compensation rate of $543.53, based upon a Form 22 Statement of Days Worked and Earningsof Injured Employee.
5. The Industrial Commission finds that plaintiff's average weekly wage for the September 20, 2006 work injury should be $825.30, with a corresponding compensation rate of $550.23. Plaintiff's earnings in the amount $38,317.42 were divided by the number of days worked (325) and then multiplied by 7 (days per week) to yield the average weekly wage. As a result of the recalculation, defendant has underpaid temporary total disability benefits to plaintiff for this claim.
6. Plaintiff initially presented to Concentra for his injury, but was later referred to Dr. Yates Dunaway, an orthopedic surgeon. Dr. Dunaway performed an arthroscopic labral debridement to plaintiff's left shoulder on November 21, 2006. *Page 6 
7. Plaintiff remained out of work due to his work injury from October 23, 2006, to December 4, 2006, and defendant paid temporary total disability compensation to plaintiff during this period.
8. On February 21, 2007, plaintiff was released to return to work without restrictions to his position as a delivery merchandiser with defendant-employer as he was determined to be at maximum medical improvement for his left shoulder injury.
9. On October 11, 2007, plaintiff sustained his second work-related accident with defendant-employer when he twisted his left knee in a cooler truck. Defendant accepted plaintiff's left knee claim with the filing of a Form 60 Employer's Admission of Employee's Right toCompensation. Defendants paid compensation to plaintiff for this claim based on an average weekly wage of $920.66 and a compensation rate of $613.81.
10. The Industrial Commission finds that plaintiff's average weekly wage and compensation rate for the October 11, 2007 work injury are $1,056.42 and $704.32, respectively. Plaintiff's earnings in the amount of $42,105.88 were divided by the number of days worked (279) multiplied by 7 (days per week) yielding an average weekly wage of $1,056.42. As a result of this recalculation, defendant has underpaid temporary total and permanent partial disability benefits to plaintiff for this claim.
11. Plaintiff presented to Concentra with complaints of left knee pain and was diagnosed with a sprained knee. Plaintiff was later referred to Dr. Jonathan Paul, an orthopedic surgeon, for evaluation and treatment. On December 19, 2007, Dr. Paul performed a left knee arthroscopy, medical meniscectomy, and chondroplasty. On January 9, 2008, plaintiff returned to light duty work for defendant-employer. *Page 7 
12. Subsequently, Dr. Paul opined that plaintiff had reached maximum medical improvement and assigned a five percent (5%) permanent partial disability rating to plaintiff's left leg.
13. On March 26, 2008, the parties entered into a Form 21 Agreement For Compensation for Disability. Plaintiff's average weekly wage was incorrectly listed as $920.66, but should have been $1,056.42. The Industrial Commission approved the Form 21 on March 26, 2008, although the average weekly wage was incorrectly calculated.
14. Defendant also paid temporary total disability compensation to plaintiff between December 19, 2007, and January 8, 2008, based on the lower average weekly wage of $920.66, instead of the correct wage of $1,056.42.
15. On March 12, 2008, plaintiff injured his right foot in his third work-related accident with defendant-employer when the lift gate on his truck malfunctioned. Defendant accepted plaintiff's claim with the filing of a Form 63 Notice of Payment of Compensation WithoutPrejudice. On April 2, 2008, plaintiff presented to Dr. Shari Baum at Concentra with complaints of right heel/foot pain. Plaintiff was diagnosed with a foot contusion and plantar fasciitis and referred for physical therapy. As plaintiff's right foot symptoms continued, plaintiff was referred to Dr. E. James Sebold, an orthopedic surgeon with a specialty in foot and ankle surgery.
16. The Industrial Commission finds that plaintiff's average weekly wage and compensation rate for the March 12, 2008 work injury are $1,009.42 and $672.98, respectively.
17. On August 21, 2008, plaintiff presented to Dr. Sebold, who diagnosed him with right-sided plantar fasciitis. Dr. Sebold did not release plaintiff from work for his right foot injury. As Dr. Sebold was concerned that plaintiff was receiving narcotic pain medications from multiple *Page 8 
providers due to his prior left knee work injury and for migraine headaches, he referred plaintiff to Dr. Neil Taub, a physical medicine and rehabilitation specialist for pain management, to consolidate plaintiff's narcotic prescriptions.
18. On August 27, 2008, plaintiff presented to Dr. Neil Taub, with persistent right foot pain. Dr. Taub diagnosed plaintiff with ankle joint pain and chronic right-sided plantar fasciitis. Dr. Taub treated plaintiff conservatively and prescribed medications that were compounded to address plaintiff's right foot pain, including Vicodin, Gabapentin, and Ketamine cream.
19. On January 13, 2009, Dr. Sebold released plaintiff with no impairment rating and no restrictions from an orthopedic standpoint for his right foot injury.
20. Despite the full duty release with no work restrictions by Dr. Sebold, on January 23, 2009, Dr. Taub assigned the work restriction of a "sit-down break every hour." Dr. Taub has continued to impose this restriction on plaintiff.
21. On May 20, 2009, plaintiff injured his right ankle and right knee in a work-related accident when he slid off a machine. Defendant accepted plaintiff's fourth claim with the filing of a Form 63 Notice of Payment of Compensation Without Prejudice.
22. Plaintiff initially presented to Concentra for his right knee injury, but on June 17, 2009, was referred to Dr. Dana Piasecki, an orthopedic surgeon. As of the date of the hearing before the Deputy Commissioner, Dr. Piasecki was treating plaintiff for both of his knee injuries. Plaintiff was released from work from June 17, 2009, to June 29, 2009, when he returned to work with defendant-employer performing light duty. *Page 9 
23. As plaintiff continued to experience problems with his right knee after returning to work, Dr. Piasecki performed a right knee arthroscopy, debridement and partial medial meniscectomy on January 13, 2010.
24. As a result of the surgery, plaintiff was released from work from January 13, 2010, to February 7, 2010. Dr. Piasecki assigned work restrictions of no prolonged bending, stooping, squatting, kneeling or twisting, no lifting, and seated work only. Plaintiff was allowed to drive. On February 8, 2010, plaintiff returned to modified duty with defendant-employer.
25. Defendant paid temporary total disability compensation to plaintiff at a weekly rate of $626.74, based on an average weekly wage of $940.08 during the time plaintiff was out of work; however, the parties later stipulated to an average weekly wage of $951.44, with a corresponding compensation rate of $634.28 with respect to this injury.
26. After returning to work on February 8, 2010, plaintiff continued to experience ongoing problems with the consequences of his right and left knee injuries. Dr. Piasecki opined that plaintiff will ultimately require bilateral knee replacements, but because of plaintiff's young age, Dr. Piasecki recommended an osteotomy and meniscal transplantation with a donor graft to his right knee. Dr. Piasecki opined that the surgery may postpone the need for knee replacement surgeries for several years.
27. During this time, plaintiff continued to present to Dr. Taub for his pain management. As part of plaintiff's treatment, Dr. Taub prepared compounds of topical analgesics, including a compound of Methadone and Ibuprofen to treat plaintiff's right foot injury. Dr. Taub also allowed plaintiff to use this compound for his knee pain.
28. At the hearing before the Deputy Commissioner, plaintiff's supervisor denied knowledge of plaintiff's prescription medication. However, the reports of the nurse case *Page 10 
manager assigned to this claim indicate that defendant-employer was copied on these notes before and after plaintiff's termination. The notes described in detail the recommendations and prescriptions of plaintiff's multiple doctors. Plaintiff also testified that he informed defendant-employer of his medications. Defendant-employer also required random drug tests, at which time plaintiff listed his medications.
29. On March 15, 2010, defendant-employer terminated plaintiff for falling asleep during the work shift of March 11 and 12, 2010.
30. Plaintiff testified that he had several syncopal episodes during his work shift on March 11 and 12, 2010, as well as on his way home after completion of the shift.
31. Dr. Taub opined that more likely than not the syncopal episodes plaintiff experienced in the early morning on March 12, 2010, were the result of side effects of the multiple pain medications that plaintiff was taking. Pursuant to Dr. Taub's instruction, plaintiff discontinued this compound after these syncopal episodes and has not experienced any such episodes since.
32. Plaintiff's supervisor testified that prior to the incident on March 11 and 12, 2010, plaintiff had never before fallen asleep.
33. The preponderance of the evidence reveals, and the Full Commission finds, that the syncopal episodes were likely the result of the Methadone and Ibuprofen compound plaintiff was taking for his right foot and knee injuries, which plaintiff explained he had only recently starting using.
34. Defendant has failed to carry its burden of proving that plaintiff's termination was unrelated to plaintiff's compensable work injury and therefore the termination does not constitute a constructive refusal to accept employment so as to bar the employee from receiving benefits. *Page 11 
35. Plaintiff applied for unemployment compensation benefits with the North Carolina Employment Security Commission after his termination. Ultimately, the Employment Security Commission found that plaintiff's termination occurred due to syncopal episodes resulting from the medications he took for his injuries. Plaintiff received a gross amount of $466.00 per week in unemployment compensation between March 15, 2010, and September 29, 2010.
36. Defendant did not reinstate periodic workers' compensation benefits between plaintiff's termination on March 15, 2010, and September 29, 2010, on the basis that plaintiff had refused suitable employment.
37. Although Dr. Piasecki released plaintiff without restrictions on April 15, 2010, he testified that plaintiff still had some limitations and that the release was provisional. Due to plaintiff's significant increase in pain, Dr. Piasecki reinstated restrictions after April 29, 2010, which have continued through the date of the hearing before the Deputy Commissioner.
38. As plaintiff testified, between March 15, 2010, and September 29, 2010, he made a reasonable job search but was not successful in locating employment that was suitable to his capacity.
39. On September 30, 2010, Dr. Piasecki restricted plaintiff from all work in anticipation of the additional surgery recommended for his right knee.
40. On October 18, 2010, defendants completed a Form 62 Notice ofReinstatement or Modification of Compensation to recommence temporary total disability benefits to plaintiff as of September 30, 2010. *Page 12 
41. Plaintiff has had medical restrictions resulting from his right foot injury since the accident on March 12, 2008, which are ongoing. These restrictions have caused plaintiff to work at modified duty with defendant-employer from March 12, 2008, through March 15, 2010.
42. For the period of March 12, 2008, through March 15, 2010, and based on his average weekly wage for his right foot injury of $1009.42, plaintiff would have earned $105,989.10 ($1009.42 multiplied by 735 days worked, divided by 7 days per week). However, according to plaintiff's check stubs, plaintiff only earned $87,587.34 during the same time period, leaving a difference of $18,401.76. Two-thirds of $18,401.76 is $12,268.45 and represents the amount of temporary partial disability to which plaintiff is entitled for his diminished earning capacity during the aforementioned time period.
43. Contested issues for plaintiff's September 20, 2006 and October 11, 2007 claims were whether plaintiff's average weekly wage was correctly calculated. Plaintiff's average weekly wage for his September 20, 2006 injury has been recalculated at a higher rate and therefore plaintiff is entitled to payment of the difference between what was paid and the recalculated higher rate.
44. Plaintiff's average weekly wage for his October 11, 2007 injury was also incorrectly calculated. A Form 21, Agreement for Compensationfor Disability, signed by plaintiff and defendant and approved by the Industrial Commission on August 26, 2008, listed plaintiff's average weekly wage at the time of injury as $920.66, "subject to verification." The Industrial Commission has recalculated plaintiff's average weekly wage to be $1,056.42. The Industrial Commission's determination that the average weekly wage was inaccurate was a step in verifying plaintiff's correct average weekly wage, as allowed by the language in the Form. The Industrial Commission is not rescinding the agreement but rather modifying it due to a mistake in the calculation.
45. The Industrial Commission's Form 21 was amended in the mid-1990's to include the phrase "subject to verification," with regard to the average weekly wage. Prior to this change, the average weekly wage could only be rescinded on the basis of fraud, misrepresentation, undue influence, or abuse of a confidential relationship. The Full Commission finds that the language "subject to verification" allows the Industrial Commission to review and modify a calculation of *Page 13 
an average weekly wage based on a mutual mistake. The Full Commission finds that the error in calculating plaintiff's average weekly wages for his September 20, 2006 and October 11, 2007 work injuries was based upon a mutual mistake of the parties.
46. There is a substantial likelihood of the necessity of future medical treatment for plaintiff's bilateral knee conditions related to his October 11, 2007 and May 20, 2009 work injuries.
47. Plaintiff's legal counsel has provided valuable legal services and a reasonable attorney's fee should be approved.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On September 20, 2006, plaintiff sustained an admittedly compensable injury by accident to his left shoulder, left elbow, and lower back, arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6). Plaintiff's average weekly wage for these injuries is $825.30, with a compensation rate of $550.23. N.C. Gen. Stat. § 97-2(5).
2. On October 11, 2007, plaintiff sustained an admittedly compensable injury by accident to his left knee, arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6). Plaintiff's average weekly wage for this injury is $1,056.42, with a compensation rate of $704.32. N.C. Gen. Stat. § 97-2(5).
3. On March 12, 2008, plaintiff sustained an admittedly compensable injury by accident to his right foot, arising out of and in the course of his employment with defendant-employer. *Page 14 
N.C. Gen. Stat. § 97-2(6). Plaintiff's average weekly wage for this injury is $1,009.42, with a compensation rate of $672.98. N.C. Gen. Stat. § 97-2(5).
4. On May 20, 2009, plaintiff sustained an admittedly compensable injury by accident to his right ankle and right knee, arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6). Plaintiff's average weekly wage for this injury is $951.44, with a compensation rate of $634.28. N.C. Gen. Stat. § 97-2(5).
5. On March 15, 2010, defendant-employer terminated plaintiff. Defendant has the burden of proving that the employee was terminated for misconduct for which a non-disabled employee would also have been terminated and that the termination was unrelated to the employee's compensable injury. McRae v. Toastmaster, Inc.,358 N.C. 488, 597 S.E.2d 695 (2004); Seagraves v. Austin Co. ofGreensboro, 123 N.C. App. 228, 472 S.E. 2d 397 (1996). Defendant has failed to carry its burden of proving that plaintiff's termination was unrelated to plaintiff's compensable work injury and therefore the termination does not constitute a constructive refusal to accept employment so as to bar plaintiff from receiving benefits.
6. Defendants have underpaid workers' compensation benefits in all four of plaintiff's claims and plaintiff is entitled to the difference between the newly recalculated compensation rates and what defendants have already paid. N.C. Gen. Stat. §§ 97-29, 97-31.
7. As a direct and proximate result of plaintiff's compensable right foot injury on March 12, 2008, plaintiff has been temporarily and partially disabled from March 12, 2008, through March 15, 2010. Based on plaintiff's average weekly wage for his right foot injury of $1009.42, plaintiff would have earned $105,989.10 ($1009.42 multiplied by 735 days worked, divided by 7 days per week). However, according to plaintiff's check stubs, plaintiff only earned $87,587.34 during the same time period, leaving a difference of $18,401.76. Two-thirds of *Page 15 
$18,401.76 is $12,268.45 and represents the amount of temporary partial disability to which plaintiff is entitled from March 12, 2008, through March 15, 2010. N.C. Gen. Stat. § 97-30.
8. As a direct and proximate result of plaintiff's compensable injuries by accident to his right foot on March 12, 2008, and right knee on May 20, 2009, plaintiff has been unable to earn the same or greater wages as he was earning in the same or any other employment from March 15, 2010, and continuing. As a result, plaintiff is entitled to receive temporary total disability compensation at the rate of $634.28 per week, continuing until further Order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
9. Defendant is entitled to a credit against plaintiff's temporary total disability benefits in the amount of unemployment benefits paid to plaintiff at the rate of $466.00 per week from March 15, 2010, to September 29, 2010. N.C. Gen. Stat. § 97-42.1.
10. As a direct and proximate result of plaintiff's compensable injuries by accident on September 20, 2006, October 11, 2007, March 12, 2008, and May 20, 2009, plaintiff is entitled to all medical expenses incurred or to be incurred for his compensable injuries for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19), 97-25.
11. There is a substantial likelihood of the necessity of future medical treatment for plaintiff's bilateral knee conditions due to the October 11, 2007 and May 20, 2009 work injuries. N.C. Gen. Stat. § 97-25.1.
12. Plaintiff's legal counsel has provided valuable legal services and a reasonable attorney's fee should be approved. N.C. Gen. Stat. § 97-90.
 *********** *Page 16 
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following: AWARD
1. Subject to an attorney's fee awarded herein, defendant shall pay $12,268.45 in temporary partial disability compensation to plaintiff for the period March 12, 2008, through March 15, 2010.
2. Subject to an attorney's fee awarded herein, defendant shall pay temporary total disability compensation to plaintiff at the rate of $634.28 per week beginning March 15, 2010, and continuing until further Order of the Industrial Commission.
3. Subject to an attorney's fee awarded herein, defendant shall pay to plaintiff the difference between the disability compensation previously paid and the amount due at the recalculated compensation rates in plaintiff's claims as follows: a) $39.24 more under I.C. No. 673849 for the increase of $6.70 per week in the compensation rate to $550.23 for the period October 23, 2006, through December 3, 2006 ($6.70/week multiplied by 41 days, divided by 7 days); b) $258.60 more under I.C. No. 893309 for the increase of $90.51 per week in the compensation rate for the period December 19, 2007, through January 8, 2008 ($90.51/week multiplied by 20 days, divided by 7 days); c) $905.10 in additional permanent disability compensation owed to plaintiff under I.C. No. 893309 (5% rating to leg multiplied by 200 weeks multiplied by $90.51 increase in compensation rate).
4. Defendant is entitled to a credit for unemployment compensation benefits in the amount of $466.00 per week from March 15, 2010, through September 29, 2010, against the temporary total disability compensation owed to plaintiff for that time period. *Page 17 
5. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation due plaintiff under Paragraphs One, Two, and Three of this Award is approved for plaintiff's counsel and shall be paid by defendant as follows: twenty-five percent of any compensation which has accrued shall be paid directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be paid directly to plaintiff's counsel.
6. Defendant shall pay all past and future medical expenses incurred or to be incurred as a result of plaintiff's compensable injuries by accident occurring on September 20, 2006, October 11, 2007, March 12, 2008, and May 20, 2009, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability.
7. Defendant shall pay the costs.
This the 9th day of November, 2011.
 S/___________________ DANNY LEE McDONALD COMMISSIONER *Page 18 
CONCURRING:
 S/___________________ PAMELA T. YOUNG CHAIR
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1